# EXHIBIT A-1

CAUSE NO. 23144B

| | | |
|---|---|---|
| SCHREINER UNIVERSITY, | § | IN THE DISTRICT COURT |
| | § | |
| PLAINTIFF | § | |
| | § | |
| | § | |
| VS. | § | |
| | § | 198TH  JUDICIAL DISTRICT |
| | § | |
| COMPASS GROUP USA, INC. DBA | § | |
| CHARTWELLS, MARTINO ORTEGA, | § | |
| ELIZABETH LESSNER, DAVID | § | |
| ARCINIEGA, CARMEN OWENS, AND | § | |
| SHANNON MARIANI, | § | |
| | § | |
| DEFENDANTS | § | KERR COUNTY, TEXAS |

**PLAINTIFF'S ORIGINAL PETITION**

**TO THE HONORABLE JUDGE OF SAID COURT:**

SCHREINER UNIVERSITY (hereinafter, sometimes referred to as "Plaintiff" or "SCHREINER") files this lawsuit complaining of COMPASS GROUP USA, INC dba CHARTWELLS, MARTINO ORTEGA, ELIZABETH LESSNER, DAVID ARCINIEGA, CARMEN OWENS, AND SHANNON MARIANI. (collectively "Defendants") and would respectfully show the Court as follows:

**I.
DISCOVERY CONTROL PLAN**

1. Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff intends to proceed with discovery under Level III as set forth in Rule 190.3.

**II.
PARTIES & SERVICE**

2. Plaintiff SCHREINER UNIVERSITY is a private university and a Texas not for profit corporation with its principal place of business located in Kerr County, Texas.

3. Defendant COMPASS GROUP USA, INC. dba CHARTWELLS ("CHARTWELLS") is a for profit Delaware corporation registered to do business in the state of Texas. Defendant CHARTWELLS may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

4. Defendant MARTINO ORTEGA ("ORTEGA") is an individual who resides in the state of Texas and who may be served with process at 128 Green Meadows, Boerne, Texas 78006 or wherever he may be found.

5. Defendant ELIZABETH LESSNER ("LESSNER") is an individual who resides in the state of Texas and who may be served with process at 13832 Paradise Valley Drive, Houston, Texas 77069 or wherever she may be found.

6. Defendant DAVID ARCINIEGA ("ARCINIEGA") is an individual who resides in the state of Texas and who may be served with process at 1902 W. Houston Street, San Antonio, Texas 78207 or wherever he may be found.

7. Defendant CARMEN OWENS ("OWENS") is an individual who resides in the state of Texas and who may be served with process at 5511 Pecan Springs, San Antonio, Texas 78249 or wherever she may be found.

8. Defendant SHANNON MARIANI ("MARIANI") is an individual who resides in the state of Texas and who may be served with process at 13151 County Road 1125, Tyler, Texas 75709 or wherever he may be found.

### III.
### JURISDICTION & VENUE

9. The amount in controversy in this action exceeds the minimum jurisdictional limits of this Court. As required by Texas Rule of Civil Procedure 47, Plaintiff pleads that it

Copy from re:SearchTX

seeks only monetary relief in an amount exceeding $1,500,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, post-judgment interest, and attorney's fees. However, as stated below, Plaintiff demands that this case be tried before a jury, at which time said jury shall determine the monetary relief awarded.

10. This Court has personal jurisdiction over the parties because all or a substantial part of the events giving rise to this dispute occurred within the state of Texas. Additionally, this Court has personal jurisdiction over the parties because Plaintiff is a resident of the state of Texas; Defendant CHARTWELLS is registered to do business in and maintains minimum sufficient contacts with the state of Texas sufficient to establish general jurisdiction; and Defendants ORTEGA, LESSNER, ARCINIEGA, OWENS, and MARIANI are residents of the state of Texas.

11. Venue is proper in this Court pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1), because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Kerr County.

IV.
**FACTS**

12. On or about May 11, 2013, SCHREINER entered into a Food Services Agreement (the "Agreement") with Defendant CHARTWELLS whereby CHARTWELLS, as an independent contractor, was granted the exclusive right to provide and manage SCHREINER's food service program, as well as the exclusive right to sell food products, non-alcoholic beverages and other such articles to students, employees, guests and other persons on SCHREINER's university campus located in Kerrville, Texas. The initial term of the Agreement was from June 1, 2013 to May 31, 2023, unless sooner terminated pursuant to the provisions of the Agreement or renewed by mutual agreement of the parties.

Copy from re:SearchTX

13. Under the terms of the Agreement, CHARTWELLS was required to operate and manage its services with "appropriate merchandise of good quality" and comply with all laws and regulations governing the preparation, handling and serving of foods. The Agreement also required that CHARTWELLS "maintain conditions of sanitation and cleanliness" and ensure that all its employees "comply with and observe all applicable rules and regulations concerning conduct" that SCHREINER imposed upon them.

14. Pursuant to Section 2 of the Agreement, either party was entitled to terminate the Agreement by providing the other party sixty (60) days' written notice of such termination. In addition, the Agreement provided that if a party fails to perform its obligations under the Agreement and after having been given thirty (30) days' notice fails to cure its breach, the non-breaching party is entitled to terminate the Agreement effective ten (10) days after the end of the thirty-day notice period.

15. In early August of 2021, during a dinner being hosted on its campus, SCHREINER became alerted by numerous guests that CHARTWELLS was serving raw and/or undercooked chicken at the dinner. In response, on August 11, 2021, SCHREINER's administration met with CHARTWELLS' then Director of Dining Services, Defendant ORTEGA, and confronted him with the multiple complaints that had been received about the quality of CHARTWELLS' food and, in particular, the service of raw and undercooked meat. Defendant ORTEGA assured CHARTWELLS that that the issue would be rectified and that it would not happen again.

16. Despite Mr. ORTEGA's assurances, the instances of undercooked and poor-quality food continued and the service that had been promised by CHARTWELLS and specifically Mr. ORTEGA continued to decline. On multiple occasions between August of 2021 and June of 2022, including but not limited to weekly standing meetings, Defendant ORTEGA

and Defendant OWENS, Director of Dining Services from February through December of 2022, were made aware of the issues with the food and services that they were providing. Defendants ORTEGA and OWENS repeatedly reassured SCHREINER that the issues were being resolved. Yet, despite their representations, Defendants ORTEGA and OWENS repeatedly failed and refused to make the required changes. Instead, they continued to provide inadequate staffing for SCHREINER's dining services, continued to fail to provide conditions of sanitation and cleanliness in SCHREINER's dining facilities, and most egregiously, continued to violate state and local laws and regulations regarding the preparation, handling, and serving of food products. These incidents of undercooked food not only posed a risk to the health and safety of individuals dining on SCHREINER's campus (many of whom became physically ill due to consuming the raw meat) but caused embarrassment to SCHREINER and damage to SCHREINER's reputation within its student body, faculty, staff, alumni, trustees, prospective families, guests, and valuable donors.

17. On November 6, 2021, SCHREINER notified CHARTWELL's Regional Vice President, Defendant MARIANI, that at an event held for prospective students and their families—an event CHARTWELLS knew was extremely important to the university—CHARTWELLS' employees had once again completely embarrassed and humiliated SCHREINER by failing to greet guests, failing to see that food was prepared and ready to be served on time, failing to provide adequate staff to serve the guests, and, most importantly, by being inexcusably rude to SCHREINER's dining guests. In response, Defendant MARIANI expressed his dismay at the situation and reassured SCHREINER that he would personally see to it that the issues were taken care of. However, as with Defendants ORTEGA and OWENS, Defendant MARIANI failed to abide by his assurances and the poor food and service persisted.

18. Seeing that it was getting no results from Defendants OWENS, ORTEGA and MARIANI, in February of 2022, after the third incident of raw and frozen chicken being served, SCHREINER reached out to CHARTWELL's District Manager, Defendant LESSNER. As with Defendant MARIANI, Defendant LESSNER promptly acknowledged the issues and assured SCHREINER that it would not happen again. However, once again, despite Defendant LESSNER's promises, the shoddy service and undercooked food went unchecked.

19. During February through May of 2022, SCHREINER continued to regularly reach out to CHARTWELLS and its employees, including Defendants LESSNER, OWENS, and MARIANI, regarding their negligence and complete failure to perform their obligations imposed not only by contract, but by health and safety laws and regulations. Despite being given numerous opportunities to cure the deficiencies, CHARTWELLS and Defendants LESSNER, MARIANI, and OWENS failed and refused to take any remedial actions, and the poor service and food continued.

20. In May of 2022, after nearly a year of enduring broken promises, woefully inadequate service, and five instances of uncooked, inedible chicken, SCHREINER met face to face with Defendant MARIANI and confronted him about the failure of CHARTWELLS to rectify things. When asked what he was going to remedy, Mr. MARIANI replied, "I don't know."

21. Seeing that Mr. MARIANI was not able to offer any viable solution to the problem, SCHREINER insisted that from there on out, no more raw or frozen chicken was to even be brought on SCHREINER's campus. Rather, all chicken must be cooked prior to being transported to campus.

22. Incredibly, despite having acknowledged and agreed to SCHREINER's request that no more uncooked chicken be brought on campus, in June of 2022, *less than one month*

*later*, raw/frozen chicken was once again served at a banquet being hosted on SCHREINER's campus. Appalled, multiple guests at the banquet informed the Executive Chef, DAVID ARCINIEGA, about the undercooked, raw chicken, and Defendant ARCINIEGA not only rebuffed their concerns, but visibly acted annoyed that they were even bringing it to his attention.

23. On July 18, 2022, SCHREINER put CHARTWELLS on formal, written notice of its breach of the Agreement and demanded that CHARTWELLS take curative actions immediately. However, once again, CHARTWELLS failed and refused to take remedial actions, forcing SCHREINER to exercise its option under the Agreement to terminate its relationship with CHARTWELLS.

## V.
## CLAIMS AGAINST DEFENDANTS

### A. NEGLIGENCE AND GROSS AGAINST CHARTWELLS

24. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth in their entirety herein.

25. As the sole provider of food and food services on Plaintiff's campus, CHARTWELLS had a duty to properly prepare and serve food that was wholesome, safe, and fit for consumption.

26. CHARTWELLS breached this duty in at least the following ways:

   a. failing to maintain conditions of sanitation and cleanliness in SCHREINER's dining facilities,

   b. failing to abide by laws and regulations governing the preparation, handling and serving of foods,

   c. serving inedible, undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus, and

   d. failing and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

**PLAINTIFF'S ORIGINAL PETITION** **PAGE 7 OF 18**

Copy from re:SearchTX

27. Each of the above negligent acts or omissions, singularly or in combination with others, constituted negligence and was a proximate cause of Plaintiff's damages.

28. Further, CHARTWELLS' actions and/or inactions constituted gross negligence in that CHARTWELLS, despite being made aware of its negligent actions, knowingly and repeatedly failed to maintain and/or ensure the maintenance of conditions of sanitation and cleanliness in SCHREINER's dining facilities; knowingly and repeatedly failed to abide by or ensure that those providing dining services to SCHREINER were abiding by applicable laws and regulations governing the preparation, handling and serving of foods; knowingly and repeatedly allowed the preparation and service of inedible, undercooked food, including raw and/or frozen chicken, which threatened the health and wellbeing of those dining on SCHREINER's campus; and knowingly and repeatedly failed and refused to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

29. CHARTWELL's conduct, when viewed objectively from the standpoint of CHARTWELLS at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further CHARTWELLS had an actual, subjective awareness of the risk involved, but nevertheless, proceeded intentionally or with conscious indifference to the rights, safety, or welfare of others. Therefore, Plaintiff is entitled to exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.003(a).

### B. NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANT ARCINIEGA

30. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth herein in their entirety herein.

31. From January to June of 2022, Defendant ARCINIEGA was the Executive Chef in charge of preparing the food on SCHREINER's campus. As Executive Chef, Defendant ARCINIEGA had a duty to ensure that all the food prepared by him or under his direction was wholesome and fit for consumption. Defendant ARCINIEGA breached this duty by failing to properly prepare food and instead serving undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus. Defendant ARCINIEGA further breached his duty by ignoring and dismissing complaints made directly to him about the food he had prepared and failing to take the necessary curative measures to ensure that the food he was preparing was properly cooked and safe for consumption.

32. Each of the above negligent acts or omissions, singularly or in combination with others, constituted negligence and was a proximate cause of Plaintiff's damages.

33. Further, Defendant ARCINIEGA committed gross negligence by knowingly and repeatedly allowing the preparation and service of inedible, undercooked food, including raw and/or frozen chicken, which threatened the health and wellbeing of those dining on SCHREINER's campus, and purposefully dismissing concerns over the ill-prepared food and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

34. Defendant ARCINIEGA's conduct, when viewed objectively from the standpoint of Defendant ARCINIEGA at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further Defendant ARCINIEGA had an actual, subjective awareness of the risk involved, but nevertheless, proceeded intentionally or with conscious indifference to the rights, safety, or

welfare of others. Therefore, Plaintiff is entitled to exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.003(a).

## C. NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANTS LESSNER, MARIANI, ORTEGA, AND OWENS

35. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth in their entirety herein.

36. At all times material hereto, Defendants LESSNER, MARIANI, ORTEGA, and OWENS, as mangers, were responsible for overseeing the handling, preparation and service of food on SCHREINER's campus. Defendants LESSNER, MARIANI, ORTEGA, and OWENS each had a duty to ensure that all the food prepared by under his or her direction was wholesome and safe for consumption. Defendants LESSNER, MARIANI, ORTEGA, and OWENS breached this duty by failing to put mechanisms in place to ensure that the food being served on SCHREINER's campus was properly cooked in accordance with local health and safety laws and instead, permitting the service of undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus. Defendants LESSNER, MARIANI, ORTEGA, and OWENS each further breached their duties by ignoring and dismissing complaints made directly to them about the food and failing to take the necessary curative measures to ensure that the food that was being prepared and served was properly cooked and safe for consumption.

37. Each of the above negligent acts or omissions, singularly or in combination with others, constituted negligence and was a proximate cause of Plaintiff's damages.

38. Further, Defendants LESSNER, MARIANI, ORTEGA, and OWENS committed gross negligence by knowingly and repeatedly allowing the preparation and service of inedible, undercooked food, including raw and/or frozen chicken, which threatened the health and

wellbeing of those dining on SCHREINER's campus, and purposefully dismissing concerns over the ill-prepared food and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

39. The conduct of Defendants LESSNER, MARIANI, ORTEGA, and OWENS, when viewed objectively from the standpoint of Defendants LESSNER, MARIANI, ORTEGA, and OWENS at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further Defendants LESSNER, MARIANI, ORTEGA, and OWENS had an actual, subjective awareness of the risk involved, but nevertheless, proceeded intentionally or with conscious indifference to the rights, safety, or welfare of others. Therefore, Plaintiff is entitled to exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.003(a).

40. Defendants ORTEGA, OWENS, LESSNER, and MARIANI breached their duties in at least the following ways:

   a. failing to ensure that adequate staffing was provided for the dining services at SCHREINER,

   b. failing to ensure that conditions of sanitation and cleanliness were maintained in SCHREINER's dining facilities,

   c. failing to ensure that laws and regulations governing the preparation, handling and serving of foods were being abided by,

   d. failing to ensure the quality and safety of the food being prepared and served on SCHREINER's campus, and

   e. failing and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

41. Each of the above negligent acts or omissions, singularly or in combination with others, constituted negligence and was a proximate cause of Plaintiff's damages.

### D. NEGLIGENCE PER SE AGAINST ALL DEFENDANTS

42. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

43. Defendants' conduct also constitutes negligence per se in that Defendants violated certain provisions of Chapter 25, Section 228 of the Texas Administrative Code, including but not limited to 25 TAC §228.71(a)(1)(B) requiring that raw poultry be cooked to heat all parts of the food at a temperature of 165 degrees Fahrenheit or above for at least 15 seconds

44. Plaintiff, a consumer of the food being prepared and served by Defendants, belongs to the class of persons the statute was designed to protect, and the injury suffered by Plaintiff in the form of damage to Plaintiff's reputation and lost revenues from students who failed to matriculate or re-enroll as a result of the sub-standard and contaminated food, is the type of injury the statute was designed to prevent. The statute imposes a mandatory standard of conduct for which tort liability can be imposed, Defendants repeatedly violated the statute by preparing and serving raw and/or frozen chicken without excuse, and Defendants' actions and/or inactions were the proximate cause of Plaintiff's injuries.

### E. BREACH OF CONTRACT AGAINST CHARTWELLS

45. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth in their entirety herein.

46. Plaintiff and CHARTWELLS entered into a valid and enforceable contract. Under the terms of the Agreement, CHARTWELLS was required to operate and manage its services with "appropriate merchandise of good quality" and "comply with all federal, state and local laws and regulations governing the preparation, handling and serving of foods." The Agreement also required that CHARTWELLS "maintain conditions of sanitation and cleanliness" and

ensure that all its employees "comply with and observe all applicable rules and regulations concerning conduct" that SCHREINER imposed upon them.

47. CHARTWELLS breached the Agreement in at least the following ways:

   a. failing to provide adequate staffing for its dining services,

   b. failing to maintain conditions of sanitation and cleanliness in SCHREINER's dining facilities,

   c. failing to abide by laws and regulations governing the preparation, handling and serving of foods,

   d. serving inedible, undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus, and

   e. failing and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

48. Pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, Plaintiff is entitled to recover its reasonable and necessary attorney fees for CHARTWELLS breach of the Agreement.

**F.    BREACH OF IMPLIED WARRANTY AGAINST CHARTWELLS**

49. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

50. CHARTWELLS made express or implied affirmations relating to its services being performed within commercially acceptable standards. CHARTWELLS failed to provide adequate staffing for its dining services; failed to maintain conditions of sanitation and cleanliness in SCHREINER's dining facilities; failed to properly prepare, handle, and serve food on SCHREINER's campus; and failed to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus. CHARTWELLS guaranteed that its services would be provided in accordance with local, state and federal law and regulations.

Those affirmations or promises became part of the bargain.

51. Plaintiff relied on these warranties to its detriment, and CHARTWELLS did not comply with its promises.

52. CHARTWELLS' failures were the direct and proximate cause of Plaintiff's damages.

### G.   NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS

53. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

54. Each of the Defendants made representations relating to their ability to provide adequate staffing for the dining services that they were to provide to Plaintiff and relating to their ability to maintain or ensure maintenance of conditions of sanitation and cleanliness in SCHREINER's dining facilities. Defendants also represented that they would properly prepare, handle, and serve, food on SCHREINER's campus. At no time did Defendants correct their false representations.

55. Defendants' representations constituted false information for the guidance of others in their business, namely the Plaintiff.

56. Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff regarding the quality of the services they were providing.

57. Plaintiff suffered pecuniary losses by justifiably relying on Defendants' representations as to their abilities to safely conduct the dining services they were responsible for.

Copy from re:SearchTX

H. **TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AGAINST ALL DEFENDANTS**

58. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

59. Plaintiff had continuing business relationships with existing students at the university and their families. Plaintiff also had business relations with prospective students and their families who were considering matriculation at SCHREINER. Through the numerous meetings and conversations SCHREINER personnel had with Defendants regarding the deficiencies in Defendants' preparation, handling and service of food, Defendants had actual knowledge of Plaintiff's business relationships and the harm Defendants were causing to such relationships by Defendants' repeatedly failure to correct their deficiencies. As a result of Defendants' willful and intentional failure to implement procedures and protocols to ensure the health and safety of Plaintiff's guests, Plaintiff suffered damages in the form of lost revenue from both existing and prospective students, who failed to matriculate or renew their enrollment at Plaintiff's university.

I. **FRAUD AGAINST ALL DEFENDANTS**

60. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

61. Defendants knowingly and/or recklessly made false, material representations concerning their abilities to ability to provide adequate staffing for the dining services that they were to provide to Plaintiff and concerning their ability to maintain or ensure the maintenance of conditions of sanitation and cleanliness in SCHREINER's dining facilities. Defendants also made false, material representations that they were able to properly prepare, handle, and serve, food on SCHREINER's campus.

Copy from re:SearchTX

62. Defendants made these false statements with the intent to induce Plaintiff to act, including inducing Plaintiff to expend a considerable amount of money on Defendants' dining services.

63. Plaintiff justifiably relied on Defendants' false representations, causing Plaintiff damages.

64. Defendants committed these fraudulent acts with the willful and/or knowing disregard for the rights of Plaintiff, entitling Plaintiff to punitive damages.

## VI.
## ACTUAL DAMAGES

65. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth herein in their entirety herein.

66. As a proximate result of the negligence, gross negligence, negligence per se, breach of contract, breach of implied warranty, negligent misrepresentation, tortious interference, and fraud as detailed above, Plaintiff has suffered actual damages, including out of pocket expenses, within the jurisdictional limits of this Court.

## VII.
## EXEMPLARY DAMAGES

67. Due to the grossly negligent conduct of Defendants, jointly and severally, Plaintiff seeks recovery for exemplary damages. Exemplary damages include punitive damages and in determining the amount of exemplary damages, the trier of fact should consider the following:

    a. The nature of the wrong;

    b. The character of the conduct involved;

    c. The degree of culpability of the wrongdoer;

    d. The situation and sensibilities of the parties concerned;

  e.  The extend to which such conduct offends a public sense of justice and propriety; and

  f.  The net worth of the Defendants.

  68.  Plaintiff alleges that the provision within TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.008(b) limiting the amount of exemplary damages assessed against Defendants is unconstitutional, as it violates the Constitution of the United States and the Texas Constitution.

## VIII.
## JURY DEMAND

  Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## IX.
## CONDITIONS PRECEDENT

  All conditions precedent to Plaintiff's claim have been performed or have occurred.

## X.
## OBJECTION TO ASSOCIATE JUDGE

  Plaintiff objects to the referral of this case to an associate judge for hearing a trial on the merits or presiding at a jury trial.

## XII.
## PRAYER

  WHEREFORE, PREMISES CONSIDERED, Plaintiff SCHREINER UNIVERSITY respectfully requests that the Court issue citation for each of the Defendants to appear and answer and that upon final hearing, Plaintiff be awarded a judgment against Defendants for the following relief:

  a.  Actual damages;

  b.  Punitive damages;

  c.  Prejudgment and post-judgment interest;

  d.  Court costs;

  e.  Attorney fees;

Copy from re:SearchTX

f.  Any and all other relief, both at law and in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**CHAMBLEE RYAN, P.C.**
2777 Stemmons Freeway, Suite 1257
Dallas, Texas 75207
(214) 905-2003 (Telephone)
(214) 905-1213 (Facsimile)

By: _/s/ Lynne P. Clarke_
**William H. Chamblee**
State Bar No. 04086100
wchamblee@cr.law
**LYNNE P. CLARKE**
State Bar No. 04316750
lclarke@cr.law

**ATTORNEYS FOR SCHREINER UNIVERSITY**

---

**PLAINTIFF'S ORIGINAL PETITION**　　　　　　　　　　　　　　　　　**PAGE 18 OF 18**

Copy from re:SearchTX