# EXHIBIT A-3

Filed 8/14/2023 11:13 AM
Dawn Kay Lantz
District Clerk - Kerr County, TX
By: Jasmine Stehling, Deputy

## CAUSE NO. 23144B

| | | |
|---|---|---|
| **SCHREINER UNIVERSITY,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **PLAINTIFF** | § | |
| | § | |
| | § | |
| **VS.** | § | |
| | § | **198ᵀᴴ JUDICIAL DISTRICT** |
| **COMPASS GROUP USA, INC. DBA** | § | |
| **CHARTWELLS, MARTINO ORTEGA,** | § | |
| **ELIZABETH LESSNER, DAVID** | § | |
| **ARCINIEGA, CARMEN OWENS, AND** | § | |
| **SHANNON MARIANI,** | § | |
| | § | |
| **DEFENDANTS.** | § | **KERR COUNTY, TEXAS** |

### PLAINTIFF'S SECOND AMENDED ORIGINAL PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

SCHREINER UNIVERSITY (hereinafter, sometimes referred to as "Plaintiff" or "SCHREINER") files this lawsuit complaining of COMPASS GROUP USA, INC dba CHARTWELLS, MARTINO ORTEGA, ELIZABETH LESSNER, DAVID ARCINIEGA, CARMEN OWENS, AND SHANNON MARIANI. (collectively "Defendants") and would respectfully show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff intends to proceed with discovery under Level III as set forth in Rule 190.3.

### II.
### PARTIES & SERVICE

2. Plaintiff SCHREINER UNIVERSITY is a private university and a Texas not-for-profit corporation with its principal place of business located in Kerr County, Texas.

3. Defendant COMPASS GROUP USA, INC. dba CHARTWELLS ("CHARTWELLS") is a for-profit Delaware corporation registered to do business in the state of Texas. Defendant CHARTWELLS may be served with process through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

4. Defendant MARTINO ORTEGA ("ORTEGA") is an individual who resides in the state of Texas and who may be served with process at 128 Green Meadows, Boerne, Texas 78006 or wherever he may be found.

5. Defendant ELIZABETH LESSNER ("LESSNER") is an individual who resides in the state of Texas and who may be served with process at 13832 Paradise Valley Drive, Houston, Texas 77069 or wherever she may be found.

6. Defendant DAVID ARCINIEGA ("ARCINIEGA") is an individual who resides in the state of Texas and who may be served with process at 1902 W. Houston Street, San Antonio, Texas 78207 or wherever he may be found.

7. Defendant CARMEN OWENS ("OWENS") is an individual who resides in the state of Texas and who may be served with process at 5511 Pecan Springs, San Antonio, Texas 78249 or wherever she may be found.

8. Defendant SHANNON MARIANI ("MARIANI") is an individual who resides in the state of Texas and who may be served with process at 13151 County Road 1125, Tyler, Texas 75709 or wherever he may be found.

### III.
### JURISDICTION & VENUE

9. The amount in controversy in this action exceeds the minimum jurisdictional limits of this Court. As required by Texas Rule of Civil Procedure 47, Plaintiff pleads that it

seeks only monetary relief in an amount exceeding $1,500,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, post-judgment interest, and attorney's fees. However, as stated below, Plaintiff demands that this case be tried before a jury, at which time said jury shall determine the monetary relief awarded.

10. This Court has personal jurisdiction over the parties because all or a substantial part of the events giving rise to this dispute occurred within the state of Texas. Additionally, this Court has personal jurisdiction over the parties because Plaintiff is a resident of the state of Texas; Defendant CHARTWELLS is registered to do business in and maintains minimum sufficient contacts with the state of Texas sufficient to establish general jurisdiction; further, CHARTWELLS entered into a contract with SCHREINER, which CHARTWELLS breached and failed to perform in Texas, such that the Court may exercise specific jurisdiction over CHARTWELLS. Defendants ORTEGA, LESSNER, ARCINIEGA, OWENS, and MARIANI are residents of the state of Texas.

11. Venue is proper in this Court pursuant to Texas Civil Practice & Remedies Code § 15.002(a)(1), because all or a substantial part of the events or omissions giving rise to this lawsuit occurred in Kerr County.

### IV.
### FACTS

12. On or about May 11, 2013, SCHREINER entered into a Food Services Agreement (the "Agreement") with Defendant CHARTWELLS whereby CHARTWELLS, as an independent contractor, was granted the exclusive right to provide and manage SCHREINER's food service program, as well as the exclusive right to sell food products, non-alcoholic beverages and other such articles to students, employees, guests, and other persons on SCHREINER's university campus located in Kerrville, Texas. The initial term of the Agreement

was from June 1, 2013 to May 31, 2023, unless sooner terminated pursuant to the provisions of the Agreement or renewed by mutual agreement of the parties.

13. Under the terms of the Agreement, CHARTWELLS was required to operate and manage its services with "appropriate merchandise of good quality" and comply with all laws and regulations governing the preparation, handling and serving of foods. The Agreement also required that CHARTWELLS "maintain conditions of sanitation and cleanliness" and ensure that all its employees "comply with and observe all applicable rules and regulations concerning conduct" that SCHREINER imposed upon them.

14. Pursuant to Section 2 of the Agreement, either party was entitled to terminate the Agreement by providing the other party sixty (60) days' written notice of such termination. In addition, the Agreement provided that if a party fails to perform its obligations under the Agreement and after having been given thirty (30) days' notice fails to cure its breach, the non-breaching party is entitled to terminate the Agreement effective ten (10) days after the end of the thirty-day notice period.

15. In early August of 2021, during a lunch being hosted on its campus, SCHREINER became alerted by numerous guests that CHARTWELLS was serving raw and/or undercooked chicken at the lunch. In response, on August 11, 2021, SCHREINER's administration met with CHARTWELLS' then Director of Dining Services, Defendant ORTEGA, and confronted him with the multiple complaints that had been received about the quality of CHARTWELLS' food and, in particular, the service of raw and undercooked meat. Defendant ORTEGA assured SCHREINER that that the issue would be rectified and that it would not happen again.

16. Despite Mr. ORTEGA's assurances, the instances of undercooked and poor-quality food continued and the quality of service that had been promised by CHARTWELLS and specifically Mr. ORTEGA continued to decline. On multiple occasions between August and

December of 2021, including but not limited to weekly standing meetings, Defendant ORTEGA was made aware of the issues with the food and services that he and CHARTWELLS were providing to SCHREINER. Defendant ORTEGA repeatedly reassured SCHREINER that the issues were being resolved. Yet, despite his representations, Defendants ORTEGA and CHARTWELLS repeatedly failed and refused to make the required changes. Instead, he continued to provide inadequate staffing for SCHREINER's dining services, continued to fail to provide conditions of sanitation and cleanliness in SCHREINER's dining facilities, and most egregiously, continued to violate laws and regulations regarding the preparation, handling, and serving of food products. These incidents of undercooked food not only posed a risk to the health and safety of individuals dining on SCHREINER's campus (some of whom became physically ill due to consuming the raw meat) but caused embarrassment to SCHREINER and damage to SCHREINER's reputation within its student body, faculty, staff, alumni, trustees, prospective families, guests, and valuable donors.

17. On November 6, 2021, SCHREINER notified CHARTWELL's Regional Vice President, Defendant MARIANI, that at an event held for prospective students and their families—an event CHARTWELLS knew was extremely important to the university—CHARTWELLS' employees had once again completely embarrassed and humiliated SCHREINER by failing to greet guests, failing to see that food was properly prepared and ready to be served on time, failing to provide adequate staff to serve the guests, and, most importantly, by being inexcusably rude to SCHREINER's dining guests. In response, Defendant MARIANI expressed his dismay at the situation and reassured SCHREINER that he would personally see to it that the issues were taken care of. However, as with Defendant ORTEGA, Defendant MARIANI failed to abide by his assurances, and the poor food and service persisted.

18.     Seeing that it was getting no results from Defendants ORTEGA and MARIANI, in February of 2022, after the third incident of raw and frozen chicken being served, SCHREINER reached out to CHARTWELL's District Manager, Defendant LESSNER. As with Defendant MARIANI, Defendant LESSNER promptly acknowledged the issues and assured SCHREINER that it would not happen again. However, once again, despite Defendant LESSNER's promises, the shoddy service and undercooked food went unchecked.

19.     In February of 2022, Defendant OWENS took over as Director of CHARTWELLS' dining services at SCHREINER. From February through May of 2022, SCHREINER continued to regularly reach out to CHARTWELLS and its employees, including Defendants LESSNER, OWENS, and MARIANI, regarding their negligence and complete failure to perform their obligations imposed not only by contract, but by health and safety laws and regulations. Despite being given numerous opportunities to cure the deficiencies, CHARTWELLS and Defendants LESSNER, MARIANI, and OWENS failed and refused to take any remedial actions, and the poor service and food continued.

20.     For example, on two separate occasions in the spring of 2022, including a staff appreciation luncheon held in May of 2022, SCHREINER students, faculty, staff, and guests were once again served raw and/or frozen chicken by CHARTWELLS' staff. Appalled, multiple guests at the staff appreciation luncheon informed the Executive Chef, DAVID ARCINIEGA, about the undercooked, raw chicken. Defendant ARCINIEGA not only rebuffed their concerns, but visibly acted annoyed that the concerns were even being brought to his attention. Many guests at the luncheon also immediately notified SCHREINER employees about the undercooked chicken.  The university did what it could to rectify the situation by demanding that the food be immediately picked up from the serving stations, but unfortunately it was too late- the damage to its reputation had already been done. In the coming weeks, instead of performing

their regular duties, Schreiner employees were forced to respond to numerous phone calls and emails complaining about the raw chicken, follow up with employees and guests who became ill at the May 2022 event due to the undercooked food, and respond to reports of additional incidents of inedible food that had been served on Schreiner's campus. In fact, the complaints about the food being served on Schreiner's campus were so widespread that Schreiner was left with no choice but to file a self-report with the health department and send out a mass apology and corrective action email to all who had dined on Schreiner's campus.

21. After nearly a year of enduring broken promises, woefully inadequate service, and at least five instances of uncooked, inedible chicken, SCHREINER met face to face with Defendant MARIANI on May 11, 2022 and confronted him about the failure of CHARTWELLS to rectify things. When asked what he was going to do when a sixth incident of undercooked chicken occurred, Mr. MARIANI replied, "I don't know."

22. Because Mr. MARIANI was not able to offer any viable solution to the problem, SCHREINER insisted that from there on out, no more raw chicken was to even be brought on SCHREINER's campus. Rather, all chicken must be cooked prior to being transported to campus.

23. Incredibly, despite having acknowledged and agreed to SCHREINER's request that no more uncooked chicken be brought on campus, in June of 2022, *less than one month later*, frozen chicken was once again served at an incoming student orientation being hosted on SCHREINER's campus.

24. On July 18, 2022, SCHREINER put CHARTWELLS on formal, written notice of its breach of the Agreement and demanded that CHARTWELLS take curative actions immediately. However, once again, CHARTWELLS failed and refused to take the appropriate remedial actions, forcing SCHREINER to exercise its option under the Agreement to terminate

its relationship with CHARTWELLS.

## V.
## CLAIMS AGAINST DEFENDANTS

### A. BREACH OF CONTRACT AGAINST CHARTWELLS

25. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth in their entirety herein.

26. Plaintiff and CHARTWELLS entered into a valid and enforceable contract. Under the terms of the Agreement, CHARTWELLS was required to operate and manage its services with "appropriate merchandise of good quality" and "comply with all federal, state and local laws and regulations governing the preparation, handling and serving of foods." The Agreement also required that CHARTWELLS "maintain conditions of sanitation and cleanliness" and ensure that all its employees "comply with and observe all applicable rules and regulations concerning conduct" that SCHREINER imposed upon them.

27. CHARTWELLS breached the Agreement in at least the following ways:

   a. failing to provide adequate staffing for its dining services,

   b. failing to maintain conditions of sanitation and cleanliness in SCHREINER's dining facilities,

   c. failing to abide by laws and regulations governing the preparation, handling and serving of foods,

   d. serving inedible, undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus, and

   e. failing and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

28. Pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code, Plaintiff is entitled to recover its reasonable and necessary attorney fees for CHARTWELLS breach of the Agreement.

**B. NEGLIGENCE AND GROSS AGAINST CHARTWELLS**

29. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth in their entirety herein.

30. As the sole provider of food and food services on Plaintiff's campus, CHARTWELLS had a duty to properly prepare and serve food that was wholesome, safe, and fit for consumption.

31. CHARTWELLS breached this duty in at least the following ways:

    a. failing to maintain conditions of sanitation and cleanliness in SCHREINER's dining facilities,

    b. failing to abide by laws and regulations governing the preparation, handling and serving of foods,

    c. serving inedible, undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus, and

    d. failing and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

32. Each of the above negligent acts or omissions, singularly or in combination with others, constituted negligence and was a proximate cause of Plaintiff's damages.

33. Further, CHARTWELLS' actions and/or inactions constituted gross negligence in that CHARTWELLS, despite being made aware of its negligent actions, knowingly and repeatedly failed to maintain and/or ensure the maintenance of conditions of sanitation and cleanliness in SCHREINER's dining facilities; knowingly and repeatedly failed to abide by or ensure that those providing dining services to SCHREINER were abiding by applicable laws and regulations governing the preparation, handling and serving of foods; knowingly and repeatedly allowed the preparation and service of inedible, undercooked food, including raw and/or frozen chicken, which threatened the health and wellbeing of those dining on SCHREINER's campus;

and knowingly and repeatedly failed and refused to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

34. CHARTWELL's conduct, when viewed objectively from the standpoint of CHARTWELLS at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further CHARTWELLS had an actual, subjective awareness of the risk involved, but nevertheless, proceeded intentionally or with conscious indifference to the rights, safety, or welfare of others. Therefore, Plaintiff is entitled to exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.003(a).

### C. NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANT ARCINIEGA

35. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth herein in their entirety herein.

36. From January to the end of March of 2022, Defendant ARCINIEGA was a chef and then, from the end of March through June of 2022, the Executive Chef in charge of preparing the food on SCHREINER's campus. As Executive Chef, Defendant ARCINIEGA had a duty to ensure that all the food prepared by him or under his direction was wholesome and fit for consumption. Defendant ARCINIEGA breached this duty by failing to properly prepare food and instead serving undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus. Defendant ARCINIEGA further breached his duty by ignoring and dismissing complaints made directly to him about the food he had prepared and failing to take the necessary curative measures to ensure that the food he was preparing was properly cooked and safe for consumption.

37. Each of the above negligent acts or omissions, singularly or in combination with

others, constituted negligence and was a proximate cause of Plaintiff's damages.

38.    Further, Defendant ARCINIEGA committed gross negligence by knowingly and repeatedly preparing and serving and also allowing the preparation and service of inedible, undercooked food, including raw and/or frozen chicken, which threatened the health and wellbeing of those dining on SCHREINER's campus. Amon other things and at a minimum, ARCINIEGA knew about these severe issues with CHARTWELLS' food service at SCHREINER, and yet purposefully dismissed concerns over the ill-prepared food and refused to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

39.    Defendant ARCINIEGA's conduct, when viewed objectively from the standpoint of Defendant ARCINIEGA at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further Defendant ARCINIEGA had an actual, subjective awareness of the risk involved, but nevertheless, proceeded intentionally or with conscious indifference to the rights, safety, or welfare of others. Therefore, Plaintiff is entitled to exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.003(a).

D.    **NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DEFENDANTS LESSNER, MARIANI, ORTEGA, AND OWENS**

40.    Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth in their entirety herein.

41.    At all times material hereto, Defendants LESSNER, MARIANI, ORTEGA, and OWENS, as managers, were responsible for overseeing the handling, preparation and service of food on SCHREINER's campus. Defendants LESSNER, MARIANI, ORTEGA, and OWENS each had a duty to ensure that all the food prepared by them or under their direction was

wholesome and safe for consumption. Defendants LESSNER, MARIANI, ORTEGA, and OWENS breached this duty by failing to put mechanisms in place to ensure that the food being served on SCHREINER's campus was properly cooked in accordance with local health and safety laws and instead, permitting the service of undercooked food, including raw and/or frozen chicken, threatening the health and wellbeing of those dining on SCHREINER's campus. Defendants LESSNER, MARIANI, ORTEGA, and OWENS each further breached their duties by ignoring and dismissing complaints made directly to them about the food and failing to take the necessary curative measures to ensure that the food that was being prepared and served was properly cooked and safe for consumption.

42. Each of the above negligent acts or omissions, singularly or in combination with others, constituted negligence and was a proximate cause of Plaintiff's damages.

43. Further, Defendants LESSNER, MARIANI, ORTEGA, and OWENS committed gross negligence by knowingly and repeatedly preparing and allowing the preparation and service of inedible, undercooked food, including raw and/or frozen chicken, which threatened the health and wellbeing of those dining on SCHREINER's campus, and purposefully dismissing concerns over the ill-prepared food and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

44. The conduct of Defendants LESSNER, MARIANI, ORTEGA, and OWENS, when viewed objectively from the standpoint of Defendants LESSNER, MARIANI, ORTEGA, and OWENS at the time of the acts or omissions, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Further Defendants LESSNER, MARIANI, ORTEGA, and OWENS had an actual, subjective awareness of the risk involved, but nevertheless, proceeded intentionally or with conscious indifference to the rights, safety, or welfare of others. Therefore, Plaintiff is entitled to exemplary damages pursuant to TEXAS CIVIL

PRACTICE AND REMEDIES CODE § 41.003(a).

45. Defendants ORTEGA, OWENS, LESSNER, and MARIANI breached their duties in at least the following ways:

    a. failing to ensure that adequate staffing was provided for the dining services at SCHREINER,

    b. failing to ensure that conditions of sanitation and cleanliness were maintained in SCHREINER's dining facilities,

    c. failing to ensure that laws and regulations governing the preparation, handling and serving of foods were being abided by,

    d. failing to ensure the quality and safety of the food being prepared and served on SCHREINER's campus, and

    e. failing and refusing to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus.

46. Each of the above negligent acts or omissions, singularly or in combination with others, constituted negligence and was a proximate cause of Plaintiff's damages.

### E. BREACH OF IMPLIED WARRANTY AGAINST CHARTWELLS

47. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

48. CHARTWELLS made express or implied affirmations relating to its services being performed within commercially acceptable standards. CHARTWELLS failed to provide adequate staffing for its dining services; failed to maintain conditions of sanitation and cleanliness in SCHREINER's dining facilities; failed to properly prepare, handle, and serve food on SCHREINER's campus; and failed to take the necessary curative measures to ensure the health and safety of those dining on SCHREINER's campus. CHARTWELLS guaranteed that its services would be provided in accordance with local, state and federal law and regulations. Those affirmations or promises became part of the bargain.

49. Plaintiff relied on these warranties to its detriment, and CHARTWELLS did not comply with its promises.

50. CHARTWELLS' failures were the direct and proximate cause of Plaintiff's damages, which include but are not limited to the difference between the value of the services and food as guaranteed by CHARTWELLS and the value of the services and food actually delivered to SCHREINER.

**F. NEGLIGENT MISREPRESENTATION AGAINST ALL DEFENDANTS**

51. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

52. Each of the Defendants made representations relating to their ability to provide adequate staffing for the dining services that they were to provide to Plaintiff and relating to their ability to maintain or ensure maintenance of conditions of sanitation and cleanliness in SCHREINER's dining facilities. Defendants also represented that they would properly prepare, handle, and serve, food on SCHREINER's campus, when Defendants knew that corrective and remedial actions were not- and would not- be taken. At no time did Defendants correct their false representations.

53. Defendants' representations constituted false information for the guidance of others in their business, namely the Plaintiff.

54. Defendants failed to exercise reasonable care or competence in obtaining or communicating information to Plaintiff regarding the quality of the services they were providing.

55. Plaintiff suffered pecuniary losses by justifiably relying on Defendants' representations as to their abilities to safely conduct the dining services they were responsible for.

### G. TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AGAINST ALL DEFENDANTS

56. Plaintiff realleges and incorporates by reference the facts and allegations set forth above as though fully set forth in their entirety herein.

57. Plaintiff had continuing business relationships with existing students at the university and their families. Plaintiff also had business relations with prospective students and their families who were considering matriculation at SCHREINER. Through the numerous meetings and conversations SCHREINER personnel had with Defendants regarding the deficiencies in Defendants' preparation, handling and service of food, Defendants had actual knowledge of Plaintiff's existing and prospective business relationships and the harm Defendants were causing to such relationships by Defendants' repeatedly failure to correct their deficiencies. As a result of Defendants' willful and intentional failure to implement procedures and protocols to ensure the health and safety of Plaintiff's guests, Plaintiff suffered damages in the form of lost revenue from both existing and prospective students, who failed to matriculate or renew their enrollment at SCHREINER.

## VI.
## ACTUAL DAMAGES

58. Plaintiff realleges and incorporates the facts and allegations set forth above as though fully set forth herein in their entirety herein.

59. As a proximate result of the negligence, gross negligence, breach of contract, breach of implied warranty, negligent misrepresentation, and tortious interference as detailed above, Plaintiff has suffered actual damages in an amount over $2,200,000.00, in addition to consequential damages.

## VII.
## EXEMPLARY DAMAGES

60. Due to the grossly negligent conduct of Defendants, jointly and severally, Plaintiff seeks recovery for exemplary damages. Exemplary damages include punitive damages and in determining the amount of exemplary damages, the trier of fact should consider the following:

   a. The nature of the wrong;

   b. The character of the conduct involved;

   c. The degree of culpability of the wrongdoer;

   d. The situation and sensibilities of the parties concerned;

   e. The extend to which such conduct offends a public sense of justice and propriety; and

   f. The net worth of the Defendants.

61. Plaintiff alleges that the provision within TEXAS CIVIL PRACTICE AND REMEDIES CODE § 41.008(b) limiting the amount of exemplary damages assessed against Defendants is unconstitutional, as it violates the Constitution of the United States and the Texas Constitution.

## VIII.
## JURY DEMAND

Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## IX.
## CONDITIONS PRECEDENT

All conditions precedent to Plaintiff's claim have been performed or have occurred.

## X.
## OBJECTION TO ASSOCIATE JUDGE

Plaintiff objects to the referral of this case to an associate judge for hearing a trial on the

merits or presiding at a jury trial.

## XII.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff SCHREINER UNIVERSITY respectfully requests that the Court issue citation for each of the Defendants to appear and answer and that upon final hearing, Plaintiff be awarded a judgment against Defendants for the following relief:

a. Actual damages;

b. Consequential damages;

c. Punitive damages;

d. Prejudgment and post-judgment interest;

e. Court costs;

f. Attorney fees;

g. Any and all other relief, both at law and in equity, to which Plaintiff may show itself justly entitled.

Respectfully submitted,

**CHAMBLEE RYAN, P.C.**
2777 Stemmons Freeway, Suite 1257
Dallas, Texas 75207
(214) 905-2003 (Telephone)
(214) 905-1213 (Facsimile)

By: _/s/ Lynne P. Clarke_
**William H. Chamblee**
State Bar No. 04086100
wchamblee@cr.law
**LYNNE P. CLARKE**
State Bar No.04316750
lclarke@cr.law

**ATTORNEYS FOR SCHREINER UNIVERSITY**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Veronica Davila on behalf of Lynne Clarke
Bar No. 4316750
vdavila@cr.law
Envelope ID: 78490111
Filing Code Description: Answer/Response/Waiver
Filing Description: Plaintiff's Second Amended Original Answer
Status as of 8/14/2023 11:44 AM CST

Associated Case Party: SCHREINER UNIVERSITY

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Daniel Malone | | dan@danmalonepc.com | 8/14/2023 11:13:16 AM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| William HChamblee | | wchamblee@cr.law | 8/14/2023 11:13:16 AM | SENT |
| Lynne Clarke | | lclarke@cr.law | 8/14/2023 11:13:16 AM | SENT |
| Carla Vela | | cvela@cr.law | 8/14/2023 11:13:16 AM | SENT |
| Aisha Khan | | akhan@cr.law | 8/14/2023 11:13:16 AM | SENT |